IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Andrés González -Pérez,<br><br>Plaintiff,<br><br>v.<br><br>Harley Marine Financing LLC and Harley Marine NY, Inc.<br><br>Defendants. | Civil No. 22-1519(GMM)<br><br>Re: Actions for Damages in Tort |

**OPINION AND ORDER**

This case is a tort dispute arising from an incident in which Plaintiff Andrés González-Pérez ("Plaintiff" or "González") was allegedly injured in a fall from a negligently maintained ladder that served as a point of entry to a vessel owned and operated by Harley Marine Financing LLC ("HMF") and Harley Marine NY, Inc. ("HMNY," collectively "Defendants" or "Harley"). Before the Court is Defendants' *Motion for Summary Judgment and Memorandum of Law* ("Motion for Summary Judgment"). (Docket No. 49). For the following reasons, the Court **DENIES** Defendants' Motion for Summary Judgment.

I.   **FACTUAL BACKGROUND**

HMF was the Demise Owner of the Barge FLACO B-264 ("the Vessel" or "FLACO"). (Docket Nos. 49-1 at ¶ 2; 49-2 at ¶ 5; 52-1 at ¶ 2). HMNY was the FLACO's operator. (Docket Nos. 49-1 ¶ 3; 49-2 ¶ 6; 52-1 ¶ 3). The FLACO is "a double-hull petroleum barge capable of transporting petroleum products and, at all relevant

times, was crewed with two Tankermen who operated the barge." (Docket Nos. 49-1 ¶ 4; 49-2 ¶ 7; 52-1 ¶ 4). On October 13, 2021, HMF and Puma Energy Caribe, LLC ("Puma") through its agent, Trafigura LLC ("Trafigura"), executed a one year Standing Time Charter agreement ("Agreement") to go into effect on November 7, 2021. (Docket Nos. 49 at 1; 52 at 4). The Agreement provides that Defendants would supply Puma with the vessels, the FLACO and the Tug C.F. CAMPBELL, and their associated crews. (Docket Nos. 49-1 ¶ 6; 49-2 ¶ 9, 4; 52-1 ¶ 6).

On May 5, 2022, Puma, via its agent Trafigura, instructed Defendants to travel to the port of Guayanilla to receive 60,000 US Barrels of #6 Fuel oil and to deliver 60,000 GSV BBLS gross standard volume barrels to Puerto Rico Electric Power Authority ("PREPA"), as purchaser, to the port of San Juan, on or about May 7-8, 2022. (Docket Nos. 49-1 ¶¶ 7-8; 49-2 ¶¶ 10-11; 49-2 at 19-26; 52-1 ¶¶ 7-8). On May 9, 2022, the FLACO arrived at Shed C of the port of San Juan, where PREPA's terminal is located, to discharge the agreed 60,000 GSV BBLS. (Docket Nos. 49-1 ¶ 12; 49-2 ¶ 13; 52-1 ¶ 12).

When the FLACO arrived at Shed C, Plaintiff was serving as the liquid cargo surveyor charged with measuring the amount of cargo on board the Vessel and the amount of cargo discharged from the Vessel. (Docket Nos. 49 at 3; 52 at 5). González's services had been retained by Petro Care Global p/d/b/a Petro Care Marine

Consultants, Inc. ("Petro"). (Docket Nos. 49-1 ¶¶ 13-14; 52-1 ¶¶ 13-14). Petro, in turn, had contracted with Puma via Trafigura to provide the latter with liquid surveyor services. (Id.). On May 10, 2022, while conducting discharge measurements on the FLACO, González sustained significant injuries after falling from an allegedly improperly secured ladder while attempting to board the Vessel. (Docket Nos. 49 at 3; 52 at 4).

## II.  PROCEDURAL HISTORY

On October 28, 2022, González filed the *Original Complaint* in this case. (Docket No. 1). Defendants filed their *Answer to Original Complaint* on December 28, 2022. (Docket No. 11). Plaintiff then filed a *First Amended Original Complaint* on February 1, 2023. (Docket No. 18). Therein, González alleged that Defendants were negligent in establishing and or maintaining a safe means of ingress and or egress to the Vessel. (Id. at 1). According to Plaintiff, Defendants' negligence in securing a ladder as a means of boarding the FLACO resulted in González falling and incurring "serious personal injuries." (Id. at 1-2). Defendants filed their *Answer to First Amended Original Complaint* on February 15, 2023. (Docket No. 20).

On March 26, 2024, Harley filed their *Motion for Summary Judgement and Memorandum of Law*. (Docket No. 49). Therein, Defendants contend that González "is barred from bringing this claim as he had a duty to insure under the State Insurance Fund

("SIF") and failed to do so" and that Plaintiff is thus estopped by his own acts. (Id. at 2). Defendants further argue that they are immune from the present suit given that they are Statutory Employers that benefit from tort liability immunity pursuant to Puerto Rico Workmen's Accident Compensation Act ("PRWACA"), 11 L.P.R.A. §§ 1 et. seq. (Id.)

On April 23, 2024, Plaintiff filed *Plaintiff's Response to Defendants' Motion for Summary Judgment*. (Docket No. 52). In his response, González contends that Defendants do not qualify as statutory employers under the PRWACA because: (1) there is no vertical, contractual employment relationship between Plaintiff and Defendants; (2) there was no mutual contractual obligation to insure González under PRWACA; (3) Defendants allegedly waived statutory employer immunity under the PRWACA in their indemnity agreement with Trafigura; and (4) neither Defendants nor Petro obtained insurance with the State Compensation Fund and are thus not immune under PRWACA. (Id. at 1-4). Finally, with leave of the Court, Defendants filed *Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment* on May 3, 2024. (Docket No. 55).

### III. LEGAL STANDARD

A. Federal Rule of Civil Procedure Rule 56

Motions for summary judgment are governed by Federal Rule of Civil Procedure Rule 56. See Fed. R. Civ. P. 56. "Summary judgment

is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Ramirez-Rivera v. DeJoy, No. 3:21-CV-01158-WGY, 2023 WL 6168223, at *2 (D.P.R. Sept. 22, 2023); *see also* Tolan v. Cotton, 572 U.S. 650, 656-57 (2014); Fed. R. Civ. P. 56(a). A genuine dispute exists if "a rational factfinder, viewing the evidence in the light most flattering to the party opposing summary judgment, could resolve the dispute in that party's favor." Grace v. Bd. of Trustees, Brooke E. Bos., 85 F.4th 1, 10 (1st Cir. 2023) (*citing* Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995)) (internal quotation marks omitted). A fact is material "if it 'has the potential of affecting the outcome of the case.'" Taite v. Bridgewater State University, Board of Trustees, 999 F.3d 86, 93 (1st Cir. 2021) (*quoting* Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)).

At the summary judgment stage of a dispute, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); *see also* Dusel v. Factory Mut. Ins. Co., 52 F.4th 495, 503 (1st Cir. 2022). In making its determination, the Court will look to "the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. . ." Johnson v. University

of Puerto Rico, 714 F.3d 48, 52 (1st Cir. 2013) (*citing* Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)).

The party moving for summary judgment bears "[t]he initial burden of demonstrat[ing] the absence of a genuine issue of material fact with definite and competent evidence." Condado 3 CFL, LLC v. Reyes Trinidad, 312 F. Supp. 3d 255, 258 (D.P.R. 2018) (*quoting* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (*quoting* DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)).

In reviewing the parties' submissions, the Court must refrain from weighing or assessing the credibility of conflicting pieces of evidence. *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000); Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). Rather, "[a]ll reasonable factual inferences must be drawn in favor of the party against whom summary judgement is sought." Cintron v. Hosp. Comunitario El Buen Samaritano, Inc., 597 F.Supp.3d 515, 527 (D.P.R. 2022) (*citing* Shafmaster v. United States, 707 F.3d. 130, 135 (1st Cir. 2013)). The Court however should refrain from "'draw[ing] unreasonable

inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective.'" López-Hernández v. Terumo Puerto Rico LLC, 64 F.4th 22, 28 (1st Cir. 2023) (*quoting* Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir. 2007)).

Finally, at summary judgement, the Court cannot consider any evidence or documents that have been submitted in Spanish without accompanying English language translations. *See* 48 U.S.C. § 864 (requiring "all pleadings and proceedings in the United States District Court for the District of Puerto Rico. . .be conducted in the English language"); *see also* Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 13 (1st Cir. 2007).

B.  Local Rule 56

Motions for Summary Judgement in this District are also governed by Local Rule 56. *See* Local R. Civ. P. 56(e). Local Rule 56 is an "anti-ferret rule. . .intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto the court." López-Hernández, 64 F.4th at 26. It provides that a non-moving party must "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Local Civ. R. 56(c). For facts that are not admitted, "the

opposing statement shall support each denial or qualification by a record citation. . ." Id.

The non-moving party may also "submit a separate statement of facts which they believe are in controversy." Matos Lugo v. Sociedad Espanola de Auxilio Mutuo y Beneficencia de Puerto Rico, Civil No. 20-1314 (CVR), 2023 WL 8238896, at *2 (D.P.R. Nov. 27, 2023). The moving party may then submit a reply that admits, denies, or qualifies the nonmovant's additional facts through "a separate, short, and concise statement of material facts, which shall be limited to any additional fact submitted by the opposing party" that is supported by record citation. Local Civ. R. 56(d).

"Under Local Rule 56, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated. . .when the statements contained in the movant's Statement of Uncontested Facts. . .are not properly controverted." López-Hernández, 64 F.4th at 26; see also Natal Pérez v. Oriental Bank & Trust, 291 F.Supp.3d 215, 219 (D.P.R. 2018) ("If a party improperly controverts the facts, Local Rule 56 allows the Court to treat the opposing party's facts as uncontroverted."). Litigants thus ignore Local Rule 56(c) at their peril. See López-Hernández, 64 F.4th at 26.

## IV. FINDINGS OF FACT

The Court reviewed Defendants' *Statement of Uncontested Material Facts in Support of Motion for Summary Judgment* (Docket

No. 49-1); *Plaintiff's Response to Defendant's Statement of Uncontested Material Facts in Support of Motion for Summary Judgment and Plaintiff's Separate Statement of Facts* (Docket No. 52-1); and *Defendants' Response to Plaintiff's Additional Statement of Facts* (Docket No. 55-1). Considering these submissions, the Court makes the following findings of fact.

1. HMF is a Delaware corporation and HMNY is a New York corporation. Both corporations are subsidiaries of Centerline Logistics Corporation, a Delaware corporation. (Docket Nos. 49-1 ¶ 1; 49-2 at 1 ¶ 4; 52-1 ¶ 1).

2. During all relevant times to this litigation, HMF was the Demise owner of the FLACO. (Docket Nos. 49-1 ¶ 2; 49-2 ¶ 5; 52-1 ¶ 2).

3. During all relevant times to this litigation, HMNY was the Operator of the FLACO. (Docket Nos. 49-1 ¶ 3; 49-2 ¶ 6; 52-1 ¶ 3).

4. The FLACO is a double hull petroleum barge capable of transporting petroleum products and at all relevant times to this case was crewed with two Tankermen that operated the barge. (Docket Nos. 49-1 ¶ 4; 49-2 ¶ 7; 52-1 ¶ 4).

5. On October 13, 2021, HMF and PUMA entered into a Standing Time Charter agreement (effective for one year commencing on November 7, 2021) under which Harley agreed to supply to PUMA, as Charterer, with the FLACO and the Tug C.F. CAMPBELL, and both vessels' crew complement. (Docket Nos. 49-1 ¶ 5; 49-2 ¶ 8; 52-1 ¶ 5).

6. PUMA is engaged in the sale and distribution of fuel. It entered the Agreement on the condition that it received a formal tender award contract with PREPA and the Fiscal Board. (Docket Nos. 49-1 ¶ 6; 49-2 ¶ 9, 4; 52-1 ¶ 6).

7. On May 5, 2022, PUMA, through its agent Trafigura, instructed Harley to proceed to the port of Guayanilla to load approximately 60,000 US Barrels of #6 Fuel Oil. (Docket Nos. 49-1 ¶ 7; 49-2 ¶ 10; 49-2 at 19-26; 52-1 ¶ 7).

8. Puma, through Trafigura, further requested that, upon completion of the loading operations at Guayanilla, the barge proceed to the port of San Juan to discharge, 60,000 GSV BBLS gross standard volume barrels at PREPA's terminal, on or about May 7-8, 2022. (Docket Nos. 49-1 ¶ 8; 49-2 ¶ 11; 52-1 ¶ 8).

9. At all times relevant to this case, PREPA was the Puerto Rico Government entity responsible for the generation of energy in Puerto Rico. (Docket Nos. 49-1 ¶ 9; 52-1 ¶ 9).

10. PREPA was the entity that purchased the cargo described in the preceding paragraphs from PUMA through Trafigura. PREPA was thus, the ultimate recipient of the cargo. (Docket Nos. 49-1 ¶ 10; 49-2 ¶ 12; 52-1 ¶ 10).

11. On May 9, 2022, the FLACO arrived at PREPA's terminal at Shed C of the port of San Juan, to discharge the agreed 60,000 GSV BBLS. Discharge operations concluded on May 10, 2022. (Docket Nos. 49-1 ¶ 12; 49-2 ¶ 13; 52-1 ¶ 12).

12. Pursuant to Petro's contract with Trafigura, González was appointed by Petro to serve as a liquid surveyor who was to conduct measurements on the amount of cargo on board the vessel and the amount of cargo discharged to PREPA's terminal. (Docket Nos. 49-1 ¶¶ 13-14; 52-1 ¶¶ 13-14).

13. González was self-employed and was an independent contractor. (Docket Nos. 49-1 ¶ 15; 49-1 at 38 ¶ 22, 43-78.

14. González alleges that he sustained a fall on May 10, 2022, while boarding the FLACO to conduct measurements after completion of the vessel's operations at Shed C of the port of San Juan. (Docket Nos. 49-1 ¶ 16; 52-1 ¶ 16, 60).

15. As a self-employed individual, González was not insured by the SIF. (Docket Nos. 49-1 ¶ 17; 52-1 at ¶ 17, 45-46).

16. PREPA hired an independent company, Altol Petroleum, to serve as its cargo surveyor during the shipment at issue in this dispute. (Docket Nos. 52-1 at 5 ¶ 1, 25; 55-1 ¶ 1).

17. Neither Petro nor Harley provided worker's compensation insurance to González or paid for SIF premiums with PRWACA. (Docket Nos. 49 at 11-12; 52-1 at 6 ¶ 6, 44; 55-1 ¶ 6).

## V. APPLICABLE LAW AND ANALYSIS

In diversity actions such as this, "Puerto Rico law governs the substance of Plaintiffs' claims, while federal law controls the procedural rules." Laboy-Salicrup v. Puerto Rico Elec. Power Auth., 244 F.Supp.3d 266, 270 (D.P.R. 2017) (*citing* Aleman-Pacheco v. Universal Grp., Inc., 638 Fed.Appx. 15 (1st Cir. 2016)). The Court will thus first review the substance of PRWACA and determine if Defendants qualify as statutory employers which are immune from work-based injury tort liability. The Court will then determine if Plaintiff is estopped from bringing this claim due to his own failure to insure under the SIF.

A. Is Harley Marine a "Statutory Employer" with tort liability immunity under PRWACA?

PRWACA "was enacted to address the serious economic and social maladies resulting from work-related injuries to employees. The statute's goal was to provide a fair, swift and equitable compensation mechanism to redress the damages befalling employees

due either to accidents at work or occupational illnesses. It is essentially a remedial statute geared at providing employees with specific medical and economic benefits." <u>Feliciano Rolon v. Ortho Biologics LLC</u>, 404 F.Supp.2d 409, 413 (D.P.R. 2005). The Act "establishes a system of mandatory insurance so that workers, to a certain extent, waive their right to sue their employer in exchange for a benefit which could eventually be smaller, but which is reliable, immediate and certain." <u>Marrero-Ramos v. Univ. of Puerto Rico</u>, 46 F.Supp.3d 127, 131 (D.P.R. 2014) (internal citations and quotations omitted); *see also* 11 L.P.R.A. § 1; <u>Soc. de Gananciales v. Royal Bank de P.R.</u>, 145 D.P.R. 178 (1998).

The Supreme Court of Puerto Rico has established that under PRWACA, an employer has absolute immunity from employee suits for damages arising from work-related injuries, regardless of the employer's negligence. *See* <u>Segarra-Hernandez</u>, 145 D.P.R. 178, 195, P.R. Offic. Trans. at 8 (1998); <u>Laboy-Salicrup</u>, 244 F.Supp.3d at 271. Instead, when there is "a nexus or causal relation between the injury or disease of the worker and the work performed," the employee's exclusive remedy is compensation under the SIF. <u>Pacheco Pietri v. ELA</u>, 133 D.P.R. 907, 916, 1993 P.R.-Eng. 839817 (1993); *see also* <u>Vega-Mena v. United States</u>, 990 F.2d 684, 686 (1st Cir. 1993) ("Under the workers' compensation scheme in Puerto Rico, when an employee suffers an injury, illness, disability or death as a result of any act or function inherent in [his] work, and his

employer is insured according to law, the employee's right to compensation from the employer is limited to the statutory compensation offered through the SIF.")(internal quotations omitted); *see also* 11 L.P.R.A. §§ 2, 21.

PRWACA does not bar an injured worker from bringing a tort claim for the worker's insured injuries against a third-party who is a stranger to the employer-employee relationship. *See* Santiago Hodge v. Parke Davis & Co., 126 D.P.R. 1 (1990) (hereinafter Santiago Hodge P.R.) (*reprinted in* Santiago Hodge v. Parke Davis & Co., 909 F.2d 628, 637 (1st Cir. 1990)); Vega-Mena, 990 F.2d at 686; *see also* 11 L.P.R.A. § 32. "In those instances, injured workers may then file direct actions in court against any liable third party." Salas-Rijos v. Costa Cruise Lines N.V. Costa Lines, 960 F.Supp. 902, 904 (D.P.R. 1996), aff'd sub nom. Salas-Rijos v. Costa Cruise Lines, N.V., 106 F.3d 383 (1st Cir. 1997) (*citing* Meléndez v. Steamship Mut., 763 F.Supp. 1174, 1177 (D.P.R. 1991)); *see also* 11 L.P.R.A § 32.

The Supreme Court of Puerto Rico has, however, extended PRWACA immunity to parties that do not technically qualify as employers but are nevertheless deeply involved in the employer-employee relationship, and thus, merit such immunity. *See* Santiago-Hodge, 859 F.2d at 1029; Salas-Rijos, 960 F.Supp. at 904; Vega-Mena, 990 F.2d at 686. In doing so, the Puerto Rico Supreme Court emphasized that "a contractor is not only compelled to provide workmen's

compensation insurance for his own employees, but is also subsidiarily liable for the premium payments ('taxes') of the workers of a person who 'contracted' with him [the contractor] or the workers of 'a contractor or independent subcontractor' hired by him when the latter were not insured[.]" Vega-Mena, 990 F.2d at 686-87 (1st Cir. 1993)(internal citations and quotations omitted); *see also* Santiago Hodge P.R., reprinted in 909 F.2d at 637 (emphasis in original); 11 L.P.R.A. §§ 19-20. In such circumstances, Puerto Rico Courts have employed the term "statutory employer" to refer to "the principal contractor and to distinguish him [or her] from the subcontractor, the real or contractual employer of an employee who seeks compensation for a work-related accident, when the principal contractor may be protected by the employer immunity." Santiago Hodge P.R., reprinted in 909 F.2d at 638.

Under PRWACA, a Court determines a defendant's status as a "statutory employer" by considering its contractual relationship with the injured worker's real employer, specifically by analyzing "the existence of that direct or indirect link between the workman who suffers the accident and the employer in the course of whose employment and as a consequence of which the injury takes place." Ruiz Diaz v. Vargas Reyes, 109 D.P.R. 761, 765 (1980); *see also* Salas-Rijos, 960 F. Supp. at 904.

Notably, Puerto Rico case law "has only recognized the statutory employer [liability] within the context of a contract or subcontract for work or services, and only for project owners, principal contractors or subcontractors who had, with regard to the injured worker, the mutual legal obligation to insure him with the State Insurance Fund... Unless there exists a legal nexus linking the worker's direct employer to the wrongdoer in the mutual legal obligation to insure the employee with the Fund, the alleged wrongdoer is a mere third party lacking statutory protection against claims by injured workers, and not an immune statutory employer." Vega-Mena, 990 F.2d at 687 (*citing* Santiago Hodge P.R., *reprinted in* 909 F.2d at 638)(internal quotation marks omitted); *see also* Lusson v. Carter, 704 F.2d 646, 651 (1st Cir. 1983)("For the purposes of art. 31 [11 L.P.R.A. § 32] of the Act, a third party liable for damages is a person unconnected with, alien, and separated from the juridical interaction that relates the statutory employer. . .and the contractor. . .with the State Insurance Fund <u>in the mutual legal obligation of insuring their workmen and employees</u>, pursuant to the provisions of the Workmen's Accident Compensation Act."(emphasis added)).

Critically, to link an injured employee to a statutory employer, there must be a vertical, contractual statutory relationship between the employee's actual and statutory employer. Santiago-Hodge v. Parke Davis & Co., 859 F.2d 1026, 1031 (1st Cir.

1988). The Puerto Rico Supreme Court has plainly rejected the applicability of "the common family" immunity doctrine, which exempts all employers taking part in the same project from claims by workers laboring in said project. *See* SLG Ortiz Jimenez v. Rivera Nunez, 194 D.P.R. 936, 950 (2016). In that sense, it has not "extended the employer immunity to contractors that are in no way employers of the injured workers or where no employer-employee relationship exists." De Coelho v. Seaboard Shipping Corp., 535 F.Supp. 629, 633 (D.P.R. 1982). "To extend the immunity to contractors and subcontractors based [only] on their common participation in the same project would be in detriment of the right of a worker to claim damages that he has not stipulated or waived in the historic form of exclusive insurance incorporated in our Worker's Accident Compensation Law." Id. at 634. Notably, "[t]he mere contact or contractual relationship with the employer on the fringes of the contract of employment does not transmit the immunity and protection of the exclusive remedy of Art. 20 of the Law against a tort claim." Id. Moreover, "the fact that a shipowner may be a statutory employer does not mean that a shipowner is automatically and necessarily the statutory employer of all workers on its ships." Lusson, 704 F.2d at 651.

    Defendants contend that "[Harley] would be a statutory employer either through PREPA's State Insurance Fund's insurance or through the [P]laintiff's State Insurance Fund's employer's

insurance." (Docket No. 49 at 10). The Court disagrees. In this case, Plaintiff was retained by Petro to serve as a loss control agent. Petro, in turn, contracted with Puma through Trafigura to provide liquid surveyor services. Thus, Petro was Plaintiff's principal employer and Trafigura could, arguably, be classified as its statutory employer. Harley, conversely, was engaged in a separate contractual relationship with Puma through Trafigura, dependent on the latter's contracting with PREPA. The Court concludes that Harley and Petro, Plaintiff's employer, were both subcontractors of Trafigura. Notably, Trafigura executed two independent and separate agreements with Harley and Petro.[1]

Again, the record does not support Harley's attempt to extend PREPA's PRWACA coverage to itself. Plainly, PREPA and Puma are the ones contractually connected via a fuel purchasing agreement. There is no apparent work or services agreement between PREPA and Puma, nor between PREPA and Trafigura that could trickle down to Harley. On the contrary, the only agreement on the record is one between Puma and Harley to provide the services of two vessels and their associated crews. The nature and terms of this agreement are

---

[1] This District has declined to apply statutory employer status to instances in which the employee of one subcontractor advances a cause of action against another subcontractor. *See* <u>Orta Pacheco v. Doe</u>, Civil No. 05-1388 (PG), 2008 WL 11357821, at *5 (D.P.R. Dec. 3, 2008) ("[W]e find that this is a claim filed by the employees of one subcontractor against another subcontractor [ESPR] that allegedly caused the damages. Hence, in accordance with local law, we find that ESPR is a "third party" lacking statutory protection under the PRWACA.")

Civil No 3:22-1519 (GMM)
Page -18-
Final.

**Civil No 3:22-1519 (GMM)**
**Page -18-**

independent and separate from any existing agreement between PREPA and Puma. Consequently, there is no legal nexus between Harley and Petro, Plaintiff's "actual employer." Thus, the relationship between Defendants and Plaintiffs' employer is neither vertical, nor contractual. In other words, there is no mutual legal obligation and Harley is accordingly not immune from suit pursuant to Article 20 of PRWACA, 11 L.P.R.A. § 21.

B.  <u>The Existence of an Employment Relationship between Plaintiff and Defendants</u>

Defendants also contend that Plaintiff, as a self-employed person, is estopped by his own acts from bringing this suit. Principally, Defendants allege that the Court should dismiss Plaintiff's claims because he conducted business with Defendants whilst also failing to insure himself under the SIF, as required under Section 2 of PRWACA. Defendants aver that in allowing Plaintiff to work on the Vessel, they relied on the belief that Plaintiff complied with his legal obligations to insure and file an incident report with the SIF. Plaintiff argues that: (1) Defendants' "own acts" argument relies on Harley's erroneous contention that it is a statutory employer under PRWACA; and (2) Defendant's estoppel argument fails since Harley waived any immunity from suit in the Agreement it executed with Puma.

The Court, having concluded that Defendants do not qualify as Plaintiff's statutory employer, must also reject Harley's own acts

argument. Plainly, assuming *arguendo* that Plaintiff failed to comply with a supposed legal obligation under PRWACA, such omissions would not relieve Defendants of any legal liability for Plaintiff's injury. As noted, PRWACA neither provides nor applies legal immunity to third parties such as Defendants. Thus, the Court cannot find that Defendants would have been prejudiced had Plaintiff incurred in his alleged failure to insure and or file an incident report with the SIF.

## VI. CONCLUSION

For the above stated reasons, the Court **DENIES** Defendants' *Motion for Summary Judgment and Memorandum of Law* at Docket No. 49.

IT IS SO ORDERED.

In San Juan, Puerto Rico, July 11, 2024.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE