IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Andrés González-Pérez,<br><br>Plaintiff,<br><br>v.<br><br>Harley Marine Financing LLC et al,<br><br>Defendant. | **Civil. No. 22-1519 (GMM)** |

## OPINION AND ORDER

This case is a tort dispute arising from an incident in which Plaintiff Andrés González-Pérez ("Plaintiff" or "Mr. González") was allegedly injured in a fall from a negligently maintained ladder that served as a point of entry to a vessel owned and operated by Harley Marine Financing LLC ("HMF") and Harley Marine NY, Inc. ("HMNY," collectively "Defendants" or "Harley Marine"). Before the Court are Defendants' motions *in limine*: *Motion in Limine to Exclude Portions of the Life Care Plan Prepared by Dr. Gloydian Gruz Gómez* ("Motion to Exclude Dr. Gruz Gómez") (Docket No. 58); *Motion in Limine to Exclude the Testimony of Plaintiff's Economic Expert Dr. Kenneth McCoin* ("Motion to Exclude Dr. McCoin")(Docket No. 59); *Motion in Limine to Exclude the Testimony of Ashley G. Lastrapes* ("Motion to Exclude Dr. Lastrapes") (Docket No. 60). For the following reasons, the Motions are **DENIED**.

## I.  BACKGROUND

A. Motion in Limine to Exclude Portions of the Life Care Plan Prepared by Dr. Gloydian Cruz Gómez ("Motion to Exclude Dr. Cruz Gomez")

Defendants ask the Court to exclude portions of the Life Care Plan prepared by Dr. Cruz Gómez pursuant to Fed. R. Evid. 702, Daubert v. Merrell Dow Pharm., 509 U.S. 579 (1993), and Kumho Tire Company v. Carmichael, 526 U.S. 147 (1999), because "her calculation of the cost of the medications that González will use in the future is unreliable." (Docket No. 58 at 2). In support of its argument that those portions of the Life Care Plan are based on an unreliable foundation, Harley Marine asserts that its own expert disagrees with Dr. Cruz Gómez's assessment that Plaintiff will need to use certain medications like NSAID, opioids, antidepressants and Zanaflex for the next twenty-five (25) years of his life. *See* (id. at 6-8). In response, Plaintiff asserts that Dr. Cruz Gómez's Life Care Plan is based on reliable foundations and methods because she relied on "Plaintiff's medical records, consultations with treating physicians, and accepted medical guidelines," (Docket No. 76 at 5), and applied "well-established principles in life care planning, and she provided a rational basis for her estimates." (Id. at 9).

B. <u>Motion in Limine to Exclude the Testimony of Plaintiff's Economic Expert Dr. Kenneth McCoin ("Motion to Exclude Dr. McCoin")</u>

Harley Marine argues that Dr. McCoin's opinion on Mr. González's earning capacity should be excluded from trial because the expert does not rely on sufficient facts and data, rendering the analysis unreliable. (Docket No. 59 at 5). Specifically, Defendants argue Dr. McCoin did not rely on reliable data because he did not consider Plaintiff's post-injury earnings, (<u>id.</u> at 6-7), and incorrectly relied on an assumption that wages grow over time when the record did not provide evidence of such a conclusion, (<u>id.</u> at 8-9). Conversely, Plaintiff argues Dr. McCoin appropriately relied on his tax returns and employment contract as valid, sufficient, and reasonable basis to estimate his earning capacity in the absence of his injuries. *See* (Docket No. 75 at 5, 7-8). Any income Mr. González made after his injury was irrelevant to Dr. McCoin's calculation earning capacity. *See* (<u>id.</u>). Plaintiff also argues that Dr. McCoin's application of a "societal wage growth" factor is a recognized method of forecasting future earnings capacity. *See* (<u>id.</u> at 9-10).

C. <u>Motion in Limine to Exclude the Testimony of Ashley G. Lastrapes ("Motion to Exclude Dr. Lastrapes")</u>

Harley Marine asks the court to exclude Dr. Lastrapes' vocational assessment for Mr. González because she "lacks a sufficient factual basis to opine about Plaintiff's earning capacity[,]" in violation of Fed. R. Evid. 702. (Docket No. 60).

Plaintiff argues that although Dr. Lastrapes issued a "guarded" assessment of his post-injury earning capacity, her report contained several other opinions about his capacity to work which are relevant and helpful to the trier of fact: (a) opinions on the Life Care Plan rendered by Dr. Gloydian Cruz Gómez and Plaintiff's physical limitations and decreased ability to perform activities of daily living and the resulting loss of vocational capacities and opportunities; (b) the effect that a future surgery predicted by Dr. Cruz-Gómez would have on Plaintiff's earning capacity; and (c) Plaintiff's inability to travel for work related tasks and the resulting economic losses. *See* (Docket No. 77 at 9-10).

## II.  APPLICABLE LAW

A. <u>Federal Rule of Evidence 702</u>

Fed. R. Evid. 702 controls the admissibility of expert witness testimony. *See* <u>Crow v. Marchand</u>, 506 F.3d 13, 17 (1st Cir. 2007) ("The touchstone for the admission of expert testimony in federal court litigation is Federal Rule of Evidence 702."). The Rule dictates:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

>       (c) the testimony is the product of reliable principles and methods; and
>       (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Fed. R. Evid. 702 assigns a "gatekeeping role for the judge" to ensure that the expert is "sufficiently qualified to assist the trier of fact" and "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49 (1999) (holding that Daubert applies to all expert testimony). A trial court "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co., 526 U.S. at 152. To aid trial judges in their role as gatekeepers, the Daubert Court set forth several factors that may be taken into consideration, none of which are determinative: (i) whether a theory or technique can and has been tested; (ii) whether the theory or technique has been subjected to peer review and publication; (iii) whether the particular scientific technique has a known or potential rate of error; and (iv) the "general acceptance" of a theory or technique. See Daubert, 509 U.S. at 593-94.

To determine that an expert's evidence rests of reliable foundation the district court considers whether "the testimony is based on sufficient facts or data"; whether "the testimony is the

product of reliable principles and methods"; and whether "the expert has reliably applied the principles and methods to the facts of the case." Smith v. Jenkins, 732 F.3d 51 (1st Cir. 2013) (*citing* Fed. R. Evid. 702). Where, as here, the factual basis of an expert's testimony is called into question, the district court must determine whether the testimony has "a reliable basis" in light of the knowledge and experience of the relevant discipline. *See* Kumho Tire Co., 526 U.S. at 148. Thus, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

Note, however, the difference between "unreliable" support and "insufficient" support for an expert witness' conclusion. *See* Martínez v. United States, 33 F.4th 20, 24 (1st Cir. 2022) (*quoting* Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 22 (1st Cir. 2011)). Whether the underpinning of an expert's opinion is insufficient is "a matter affecting the weight and credibility of the testimony – a question to be resolved by the jury." Id. (*quoting* Milward, 639 F.3d at 22). Conversely, "trial judges may evaluate data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the

expert's testimony as reliable." <u>Milward</u>, 639 F.3d at 15 (*quoting* <u>Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.</u>, 161 F.3d 77, 81 (1st Cir. 1998)). "In a motion to exclude pursuant to <u>Daubert</u>, the burden on the party who proffers expert testimony is not to prove that an expert's conclusion is correct but rather that the expert reached their conclusion in a scientifically sound and methodologically reliable way." <u>Id.</u> at 85.

Ultimately, Rule 702 is generally interpreted liberally in favor of the admission of expert testimony. *See* <u>Martínez</u>, 33 F4th at 24 (*quoting* <u>Levin v. Dalva Bros., Inc.</u>, 459 F.3d 68, 78 (1st Cir. 2006)).

To ensure reliability and intellectual rigor, experts "must be able to produce a written report or testimony supported by an accepted methodology that is based on substantial scientific, technical, or other specialized knowledge." <u>Figueroa v. Simplicity Plan de Puerto Rico</u>, 267 F.Supp.2d 161, 164 (D.P.R. 2003). "Failure to provide a testimony or a report detailing the basis for the expert's opinion in a comprehensive scientific manner can cause the expert witness and his report to be eliminated from trial." <u>Id.</u> (*citing* Justo Arenas & Carol M. Romey, *Professional Judgment Standard and Losing Games for Psychology, Experts and the Courts*, 68 Rev. Jur. U.P.R. 159, 180 (1999)).

### III. ANALYSIS

A. Dr. Cruz Gómez

As Harley Marine concedes that Dr. Cruz-Gómez's is qualified to render the opinions included in her report and that the methodology used in reaching said opinions meets the standards of Rule 702, Daubert and its progeny, the Court need only address whether the experts' opinions on future medications is based on reliable foundations. It finds that they do.

Within the Life Care Plan, Dr. Cruz Gómez explains that in drafting it, she "consider[ed] and utilize[d] all past medical, social, psychological, educational, vocational, and rehabilitation data to the extent they are available and applicable," (Docket No. 76-1 at 8), including the records of medication previously prescribed by Mr. González's treating physician, (Docket No. 76-2 at 35:1-37:14). From this information and "based upon [her] education, training and professional experience as a practicing physician, Board Certified Physical Medicine & Rehabilitation Specialist and Certified Life Care Planner[,]", she formulated the future medication requirements in the Life Care Plan. *See* (Docket No. 76-1 at 26). Dr. Cruz Gómez's opinions on future medications also apply a standard of "reasonable degree of medical probability" meaning that, from a medical perspective, the Mr. González will "more likely than not" require the use of medications included in the Life Care Plan. *See* (Docket No. 76-2 at 16). Dr. Cruz Gómez's

Life Care Plan is based on a sufficient facts and data and is the product of reliable principles and methods as required by Fed. R. Evid. 702

Harley Marine objects only to the section of the report where Dr. Cruz Gómez opines on the costs of Plaintiff's future medications and is based solely on the argument that "Defendants' expert, Dr. Manuel Antonio Colón García De la Noceda, disagrees with Dr. Cruz' assessment regarding Plaintiff's need to use NSAID, Zanaflex, Ultram and Pamelor." (Docket No. 58 at 6). Defendants' experts' competing opinion is the sole basis for their challenge to the factual basis of Dr. Cruz Gómez's opinions on Plaintiff's future medications. Thus, their challenge goes to credibility of the expert, not the reliability of her opinions. *See* Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 22 (1st Cir. 2011) ("when the factual underpinning of an expert is weak, it is a matter affecting the weight and credibility of the testimony – a question to be resolved by the jury.") (*quoting* United States v. Vargas, 471 F.3d 255, 264 (1st Cir. 2006)). The Motion to Exclude Dr. Cruz Gómez is **DENIED**.

B. Dr. Kenneth McCoin

Harley Marine claims Dr. McCoin's opinions and testimony should be excluded from trial pursuant to Fed. R. Evid 702 because he did not rely on sufficient facts and data rendering his expert

testimony "unreliable and untrustworthy." (Docket No. 59). The Court disagrees.

First, the Court notes that Defendant appears to confuse the "earning capacity" with "lost earning capacity." Plaintiff explains the goal of Dr. McCoin's testimony is to "offer what Plaintiff's postinjury economic capacity would have been in the absence of the incident," after which the jury will be tasked with "computing his actual loss of income because of the incident." (Docket No. 75 at 5). Still, Harley Marine demonstrates that confusion about the expert's role, concluding that "[t]he facts show that Plaintiff did not meet his burden of proof since Dr. McCoin failed to consider extremely relevant and pertinent information to determine *Plaintiff's alleged loss of earning capacity*, such as medical information, vocational data, and González's post-employment history." (Docket No. 82 at 4) (emphasis added). As Dr. McCoin repeatedly states in his deposition and as Plaintiff clarifies in his arguments, Dr. McCoin was not asked to make a determination of lost earning capacity, but to provide an estimate of what his earning capacity would have been, but for the accident, from which the jury can make a lost earning capacity determination. This is the correct lens through which to evaluate the factual bases of Dr. McCoin's opinions.

Next, the Court has determined that although Dr. McCoin assumed Plaintiff was not working after his accident, that did not

impact his analysis of his earning capacity, and thus cannot agree that this assumption rendered his opinion unreliable. Dr. McCoin was retained to assess Plaintiff's earning capacity in the absence of the injury at the center of this case. As such, whether the Plaintiff returned to work after his injuries was not relevant to Mr. McCoin's determination of his "earning capacity" even if that information will be valuable to a jury to determine "lost earning capacity." The facts that Dr. McCoin did rely on to assess the Mr. González' earning capacity, namely his tax returns from 2019-2021 and an independent contractor agreement with PETROCARE Marine Consultants, Inc., provide a reliable and sufficient basis to apply the methods for calculating earning capacity as described in his report.[1]

Lastly, Dr. McCoin's application of a "societal wage growth factor" in his earning capacity analysis does not make his conclusions unreliable. Dr. McCoin explained at deposition what a "societal wage growth factor" is and the purpose for including it in his analysis: "Those are wage growth that redounds to employees

---

[1] "Earning capacity measures a worker's net compensation earned over the worker's lifetime. Net compensation is defined as wages (cash income), plus fringe benefits (noncash income), less work-related expenses, less income and social security taxes. Net compensation is then adjusted for the probability that a person will work over the course of a worker's lifetime (by applying a worklife statistic). This adjusted net compensation is often referred to as expected net compensation. Future compensation (net and expected) is expressed in "real" terms, that is in dollars that remain constant purchasing power over time. Expected future net compensation is reduced to its present-day value by "discounting" at the expected future real rate of interest or in the parlance of the Courts: the "below-market discount rate." (Docket No. 74-2 at 1).

due to the increase in general labor productivity. And you get it whether you want it or not; in other words, there's a small, slight increase in real wage, real compensation over time […] It's about eight-tenths of a percent. Some years, it's positive; some years, it's negative, but it's a slight wage growth. And that's just due to the fact that in labor forces, the labor can do more work per unit of labor input." (Docket No 75-1 at 24:21-25:5).

The Supreme Court in Pfeifer acknowledged that future earnings cannot be calculated with certainty. Jones & Laughlin Steel Corporation v. Pfeifer, 462 U.S. 523, 546, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983) ("[B]y its very nature the calculation of an award for lost earnings must be a rough approximation."). Even so, Pfeifer instructs courts to consider "societal factors" which contributes to "wages of workers increase over time." Id. at 536 (finding that any award for lost wages should be reduced for taxes and probability of unemployment and adjusted for wage growth and present value). The Court does not find Dr. McCoin's well-reasoned implementation of a "societal wage factor" in his earning capacity calculation to be overly speculative or unreliable as to render the opinions inadmissible.

The Court is not convinced by Harley Marine's argument that Plaintiff's tax returns showing his earnings fluctuated between 2019 and 2021 proscribe Dr. McCoin from having a reliable basis to apply a societal wage growth factor to the earnings capacity

analysis. As Dr. McCoin explained in his deposition, even self-employed individuals experience market changes in wages: "[Wage] increases in a secular, long-term sense, not very, very much. But if he was not happy with his present employer, walk across the street and get another job. In other words, you can't. . .business cannot ignore economic forces. You'll lose labor." (Docket No. 75-1 at 25:23-26:2). For the Court, a fluctuation of earnings over three years does not seem to be sufficient basis to discredit the expert's methodologies. Thus, the Court cannot conclude that exclusion of Dr. McCoin's earning capacity analysis under Fed. R. Evid. 702 is warranted. The Motion to Exclude Dr. McCoin is **DENIED**.

C. Dr. Ashley Lastrapes

Harley Marine does not challenge Dr. Lastrapes' qualifications or methodology, but seeks to exclude the expert's testimony because "she lacks a sufficient factual basis to opine about Plaintiff's earning capacity[,]" and thus does not satisfy the requirement of Fed. R. Evid 702(b) that an expert's testimony must be based on "sufficient facts or data." (Docket No. 60 at 5). The Court denies the request.

Dr. Lastrapes was asked to "conduct a vocational assessment to determine factors that relate to Mr. González-Perez's post-injury earning capacity related to his injury sustained on 05/10/2022." (Docket No. 77-2 at 3). To do so, she considered

Plaintiff's medical records, employment records, litigation case materials, the expert reports by Dr. Cruz Gómez and Dr. McCoin, and conducted a clinical interview with Mr. González. *See* (id.).

On the issue of "vocational prognosis," Dr. Lastrapes concluded it was "guarded," (id. at 6), meaning that she needed "a little bit more information to make a definitive opinion about future wage loss," (Docket No. 60 at 36:21-23). This was only one of several opinions Dr. Lastrapes issued on the Mr. González' post-injury earning capacity. She also discussed "(a) opinions on the life care plan rendered by Dr. Gloydian Cruz-Gómez and Plaintiff's physical limitations and decreased ability to perform activities of daily living and the resulting loss of vocational capacities and opportunities; (b) the effect that a future surgery predicted by Dr. Cruz-Gómez would have on Plaintiff's earning capacity; and (c) Plaintiff's inability to travel for work related tasks and the resulting economic losses." (Docket No. 77 at 2).

Although Dr. Lastrapes provided several opinions in her report, Harley Marine would nonetheless have the Court exclude her entire testimony because she failed to issue a conclusive opinion on Plaintiff's vocational prognosis without further information. The Court will not punish the Plaintiff because his expert presented sound opinions within the scope of her task only where a reliable basis existed. Defendant will have the opportunity to examine the credibility of Dr. Lastrapes and her opinions through

"the traditional and appropriate means of attacking shaky but admissible evidence[,]" namely, "[v]igorous cross-examination" and "presentation of contrary evidence[.]" Daubert, 509 U.S. at 596.

## IV.   CONCLUSION

For the foregoing reasons:

*Motion in Limine to Exclude Portions of the Life Care Plan Prepared by Dr. Gloydian Cruz Gómez* filed at Docket No. 58 is **DENIED**;

*Motion in Limine to Exclude the Testimony of Plaintiff's Economic Expert Dr. Kenneth McCoin* filed at Docket No. 59 is **DENIED**; and

*Motion in Limine to Exclude the Testimony of Ashley G. Lastrapes* filed at Docket No. 60 is **DENIED.**

IT IS SO ORDERED.

In San Juan, Puerto Rico, January 6, 2025.

> s/ Gina R. Méndez-Miró
> GINA R. MÉNDEZ-MIRÓ
> United States District Judge